**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | |
| | : | |
| **DENARD A. SMITH,** | : | **VIOLATION: 18 U.S.C. § 201(c)(1)** |
| | : | **(Demanding and Accepting Gratuities)** |
| **Defendant.** | : | |

**INFORMATION**

______The United States Attorney charges:

**COUNT ONE**

At times material to this Information:

1. DENARD A. SMITH ("SMITH") was a construction representative maintenance officer, specifically a public space inspector, for the Office of Infrastructure Oversight in the District of Columbia Department of Transportation's Public Space Management Administration.

2. Whereas the District of Columbia Department of Consumer and Regulatory Affairs is responsible for permits and enforcing regulations regarding work inside buildings and residences, the District of Columbia Department of Transportation is responsible for issuing permits and enforcing regulations applicable to space outside buildings and residences.

3. Smith's territory as a public space inspector included an area bounded by Second Street and Florida Avenue, NW, 14th Street and U Street, NW, and Spring Road and Water Street. As part of his job as a public space inspector, Smith used a government-owned white Chevrolet truck with D.C. Department of Transportation markings, and his responsibilities included, among other things, driving around in his government vehicle to ensure compliance with public space regulations. For example, a construction company that left a piece of

equipment on a public sidewalk could be fined for violating public space regulations. Public space inspectors can issue tickets with $2,500 fines for public space violations. Contractors and homeowners also face economic costs for not being able to work on projects while their job sites are shut down because of regulatory infractions.

4. It was SMITH's scheme to use his position as a public space inspector to demand and accept gratuities in return for not issuing tickets, and not shutting down work sites, for violations of public space regulations.

**Public Official**

______5. As a public space inspector in the District of Columbia Department of Transportation, SMITH was a public official as that term is defined in 18 U.S.C. § 201(a)(1).

**Accepting or Receiving Things of Value**

______6. According to a written statement he voluntarily provided to authorities, on fifteen to twenty occasions between the summer of 2005 and January of 2006, SMITH accepted cash payments totaling $4,000 as a public space inspector from individuals or entities in the District of Columbia.

**For or Because of Any Official Act Performed or To Be Performed**

______7. On those fifteen to twenty occasions where SMITH accepted cash payments from individuals or entities in the District of Columbia, the payments were for or because of his official acts as a public space inspector, viz., agreeing not to issue a ticket, shut down a work site, or both, where in fact those penalties would have otherwise been imposed to remedy violations of District of Columbia public space regulations.

8. For example, on or about September 29, 2005, SMITH, while inside his Department of Transportation truck, demanded and accepted a gratuity of $50 from an individual with a worksite located in the 1500 block of 5th Street, NW, in the District of Columbia. SMITH solicited and accept the gratuity of $50 in return for not shutting the worksite down and for not writing a ticket of $2,500 for a violation of public space regulations. On a tape recorded conversation between SMITH and the individual from whom he solicited and accepted the $50 gratuity, SMITH used the term "lunch" as a euphemism for a gratuity:

> "You know what I'm saying: when I said take me out to lunch, I can't say, well, 'give me some money, you know what I'm saying, I'm taking a bribe here.' You know what I'm saying? Because I don't know who you got on the phone or who you're talking to or who else."

______9. On the tape recording, SMITH makes clear that the $50 was being demanded and received in return for an official act, as that term is defined in 18 U.S.C. § 201(a)(3):

> "SMITH: $50.00? Hey, man.
>
> MR.: That's plenty of lunch
>
> SMITH: It's kind of an insult * * *.
>
> MR: $50 is an insult? I asked you this morning.
>
> SMITH: I know, but I mean. I mean, I'm going to take it, but I'm just letting you know, man, this is an insult. You know what I'm saying, $50.00? I mean, I saved you $2,500. And then I kept them from shutting your site down, you know what I'm saying?"

10. On the tape recording, SMITH also makes clear that this is not the first gratuity he demanded or received:

"SMITH: [W]hen I said seafood, that should you—that should have kicked in. You know what I'm saying? I had another guy out here, man he—it was probably about maybe three months ago—he was digging * * *.

He was building another door down there so people can go down, you know, going out his basement * * *.

But he totally didn't know he needed a permit * * *.

I said, 'look man, just treat me to lunch, man, you know, stop the work, go get your permit. And you're good to go.' And he gave me $200.00. He came back with $200.00 and said, 'here you go, man. Treat you and your girl, man, whatever you want to do. Here you go, man.'

Because, first of all, I saved him from $2,500. You see what I'm saying? And then you keep from his project from getting put back 30 days. You see what I'm saying? He's losing money if I do that. You lose money when I give you a stop-work order."

11. SMITH's actions in soliciting and accepting gratuities were knowing and voluntary and not the product of accident, inadvertence, or mistake, nor the result of entrapment.

**(Demanding and Accepting Gratuities, in violation of Title 18 United States Code, Section 201(c)(1)).**

KENNETH L. WAINSTEIN
United States Attorney for the
District of Columbia

By: ______________________________

TIMOTHY G. LYNCH
Assistant United States Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-4862