UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-150 (HHK)** |
| | : | |
| v. | : | |
| | : | |
| **DENARD A. SMITH** | : | |

## MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. As discussed below, the defendant deserves a sentence of no less than twelve months of incarceration, which represents the mid-point of his guidelines range.

## BACKGROUND

Denard Smith was a public space inspector for the Office of Infrastructure Oversight in the District of Columbia Department of Transportation's Public Space Management Administration. Smith used a government-owned white Chevrolet truck with D.C. Department of Transportation markings to patrol his area and ensure compliance with public space regulations.

Smith used his position as a public official to demand and accept gratuities in return for not issuing tickets, and not shutting down work sites, for violations of public space regulations. According to a written statement he voluntarily provided to authorities, on fifteen to twenty occasions between the summer of 2005 and January of 2006, Smith accepted cash payments totaling $4,000 from individuals or entities in the District of Columbia for agreeing not to issue a ticket, shut down a work site, or both.

For example, on or about September 29, 2005, Smith, while inside his Department of Transportation truck, demanded and accepted a gratuity of $50 from an individual with a worksite located in the 1500 block of 5th Street, NW, in the District of Columbia in return for not shutting the worksite down and for not writing a ticket of $2,500 for a violation of public space regulations. On a tape recorded conversation between Smith and the individual from whom he solicited and accepted the $50 gratuity, Smith used the term "lunch" as a euphemism for a gratuity:

> "You know what I'm saying: when I said take me out to lunch, I can't say, well, 'give me some money, you know what I'm saying, I'm taking a bribe here.' You know what I'm saying? Because I don't know who you got on the phone or who you're talking to or who else."

On the tape recording, Smith makes clear that the $50 was being demanded and received in return for an official act:

> "SMITH:   $50.00? Hey, man.
>
> MR.:   That's plenty of lunch
>
> SMITH:   It's kind of an insult * * *.
>
> MR:   $50 is an insult? I asked you this morning.
>
> SMITH:   I know, but I mean. I mean, I'm going to take it, but I'm just letting you know, man, this is an insult. You know what I'm saying, $50.00? I mean, I saved you $2,500. And then I kept them from shutting your site down, you know what I'm saying?"

Even apart from the written statement he gave to authorities admitting 15-20 gratuities, Smith also makes clear on the recording that this is not the first gratuity he demanded or received:

"SMITH:    [W]hen I said seafood, that should you—that should have kicked in. You know what I'm saying? I had another guy out here, man he—it was probably about maybe three months ago—he was digging * * *.

He was building another door down there so people can go down, you know, going out his basement * * *.

But he totally didn't know he needed a permit * * *.

I said, 'look man, just treat me to lunch, man, you know, stop the work, go get your permit. And you're good to go.' And he gave me $200.00. He came back with $200.00 and said, 'here you go, man. Treat you and your girl, man, whatever you want to do. Here you go, man.'

Because, first of all, I saved him from $2,500. You see what I'm saying? And then you keep from his project from getting put back 30 days. You see what I'm saying? He's losing money if I do that. You lose money when I give you a stop-work order."

## **DISCUSSION**

The defendant's actions destroy the public's faith in their government. On multiple occasions, including the one on which he was recorded, the defendant ignored his duty to his employer, his duties to the citizenry, and, frankly, his duties to his family, by using his position as a public official to demand money from citizens.

Incarceration will therefore serve several important purposes. First, a sentence of at least one year will punish Mr. Smith for using his government position to steal from his fellow citizens time after time after time. Second, a sentence of at least one year would send a message of deterrence to other government employees who may have the opportunity to use their position of trust to demand things of value in return for official acts: these crimes are enforced, and it does not pay to do the crime. Finally, a sentence of at least one year sends a message to the general public that they have a right to expect public officials not to hold them over a barrel by

using their badge or other authority to demand payments. It is fundamentally about the public's right to trust their government.

The government has little doubt the defendant has other, redeeming qualities. But it urges the Court to consider the number of times he admitted to accepting gratuities (15-20); the amount of money he obtained ($4,000); the impact on public safety and the District of Columbia treasury from lost fines; and the facile, confident way he spoke to his victims when demanding payment and complaining that the payment wasn't enough: this was a man who knew what he wanted; a man who knew that his position gave him the ability to demand gratuities; a man who had no compunction, doubt, or misgivings (other than being caught[1] or the size of the gratuity[2]). He is a man who should be sentenced accordingly.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar No. 451058
UNITED STATES ATTORNEY

By: _____
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

---

[1] "I can't say, well, 'give me some money, you know what I'm saying, I'm taking a bribe here.' You know what I'm saying? Because I don't know who you got on the phone or who you're talking to or who else."

[2] "$50.00? Hey, man. * * * It's kind of an insult * * *."

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of August, 2006, I caused to be served by electronic filing a copy of the foregoing memorandum to:

>Danielle Jahn, Esquire
>Office of the Federal Public Defender
>625 Indiana Avenue, NW
>Washington, D.C. 20004

_____
Timothy G. Lynch
Assistant United States Attorney